Joseph FARRIE, individually and on behalf of himself and others similarly situated, Plaintiff,

v.

CHARLES TOWN RACES, INC.,

and

Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan,

and

Donald Hudson, Larry Moxley, Henry Woodfield, William Perry, Betty Martin and Joy Lushbaugh, in their capacities as fiduciaries and trustees of the Charles Town Racing Limited Partnership Race Track Employees Pension Plan, Defendants.

Civ. A. No. 3:93–CV–12.

United States District Court, N.D. West Virginia.

Aug. 16, 1995.

to strike the plaintiff's demand for treble and punitive damages, motion to strike the plaintiff's jury demand, and motion to dismiss for lack of subject matter jurisdiction, the Plan's motion to dismiss and the plaintiff's motion for class determination. The issues have been fully briefed and are ripe for review. They will be discussed seriatim and for the reasons stated below the Court concludes that each of the motions, except the motion to dismiss for lack of subject matter jurisdiction, should be granted.

## I. BACKGROUND

In 1976, the Shenandoah Corporation, the Charles Town Turf Club, Inc., the Joint Venture of these two parties, and the West Virginia Union of Mutual Clerks established a retirement program for all employees of the companies who are not otherwise covered by another retirement program. This plan was adopted, through an agreement of sale, by the Charles Town Racing Limited Partnership in 1983 and became the Charles Town Racing Limited Partnership Race Track Employees Pension Plan.

In 1989, the Charles Town Races, Inc. and the West Virginia Union of Mutual Clerks, Local 553, Service Employees International Union, AFL–CIO ("Union") entered into a collective bargaining agreement, acknowledging the execution of the plan documents by their predecessors-in-interest, and agreeing to be bound by the terms of the plan.

The retirement program consists of two parts: Plan I is a defined benefit plan providing pension benefits for those employees who worked during the period of 1958 through 1975 and who are still active employees; Plan II, the future plan, is a profit-sharing plan which establishes individual accounts into which excess contributions not needed for Plan I are credited depending upon the number of days worked during the racing season and upon the employee's age.

According to the Summary Plan Description, the employer agreed to finance the Plans by contributing one-quarter of one percent of the pari-mutuel handle received by the race track in accordance with legislation.

John F. Dascoli, Robin Jean Davis, Segal & Davis, Charleston, WV, for Plaintiff.

Charles F. Printz, Jr., Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This civil action is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA") and involves certain funding provisions for the Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan ("the Plan"). The case is now before the Court on the defendants' motion

"Pari–mutuel" is defined at West Virginia Code § 19–23–3(18) as follows:

> "a mutuel or collective pool that can be divided among those who have contributed their wagers to one central agency, the odds to be reckoned in accordance to the collective amounts wagered upon each contestant running in a horse or dog race upon which the pool is made, but the total to be divided among the first three contestants on the basis of the number of wagers on these[.]

The plaintiff through his union requested from Joseph F. Cuomo, C.P.A., Director of Audits for the West Virginia Racing Commission, a calculation and determination of the actual contributions made by the Charles Town Races, Inc. on behalf of the employees. (A chart of Mr. Cuomo's calculations is attached to the plaintiffs' first amended complaint as Exhibit 3.) On September 15, 1992, the plaintiff was advised that the defendants had only been contributing to the Pension Plan one-quarter of one percent of the live (at the racetrack) wagering handle and had failed to include the pari-mutuel handle from the simulcast races, such as the Kentucky Derby.

On October 23, 1992, Steven M. Bourg, Enrolled Actuary, issued a memorandum summarizing for the Trustees of the Plan the amendments to the Summary Plan Description, which were to be discussed at an October 28 meeting of the Trustees. One of the amendments involved the employer contribution to the Plan, and described the amount as "equal to 0.25% of the total of the daily pari-mutuel pools on thoroughbred horse racing *conducted by the Employer.*" (emphasis added)

On December 22, 1992, the Trustees notified plaintiff's counsel that the new language would preclude the inclusion of monies from simulcast races in the 0.25% of calculations of contributions because the simulcast races were not races conducted by the employer. The Trustees would not consider the plaintiff's request for contributions as a valid claim for benefits and therefore did not apply the claims procedure of the Summary Plan Description.

The plaintiff has alleged that the Trustees have breached their fiduciary duties under ERISA by allowing the Summary Plan Description to be amended after the claims procedure was instituted and by allowing assets of the plan and trust to be used by Charles Town Races, Inc., rather than for the benefit of the Plan's participants and their beneficiaries. He seeks to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under those terms against the Plan as defendant. He demands that the defendants be required to pay all monies with interest that are due to the Plan, and through it the plaintiff, to pay treble and punitive damages and attorney fees and costs.

## II. *DEFENDANTS' MOTIONS TO STRIKE*

The plaintiff opposes both of the motions on the grounds that they are untimely, having been filed after answers were filed on behalf of all defendants. Fed.R.Civ.P. 12(f) requires that motions to strike be filed before a responsive pleading or within twenty (20) days of a pleading to which no response is necessary. A court may order, on its own initiative at any time, that insufficient defenses or redundant or immaterial matter be stricken.

These motions were filed on December 30, 1993, more than a month after the last answers were filed, and are technically untimely. The defendants have neither explained this lateness nor offered an excuse, but ask the Court to consider the motions under its inherent powers because the issues raised are of substantial importance and because, on both issues, the law is clear.

The Court notes that motions to strike are disfavored and are infrequently granted. *Clark v. Milam,* 152 F.R.D. 66, 70 (S.D.W.Va.1993); *First Financial Savings Bank v. Am. Bankers Ins. Co.,* 783 F.Supp. 963, 966 (E.D.N.C.1991). "Before granting a motion to strike, a Court must be convinced 'there are no questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed.'" *Clark supra* at 70, (quoting *BA Mortgage & Int'l Realty v. Am. Nat'l Bank,*

706 F.Supp. 1364, 1375–76 (N.D.Ill.1989) (internal citations omitted)). However, when a party succeeds in establishing the insufficiency of a pleading, the Court should grant a motion to strike "to avoid unnecessary time and money in litigating invalid, spurious issues" *Clark* at 70 (quoting *Spell v. McDaniel,* 591 F.Supp. 1090, 1112 (E.D.N.C.1984) (internal citations omitted). The inherent power of a Court to order pleadings stricken at any time has been invoked to permit ruling on the merits of an untimely motion to strike. *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1399 (7th Cir.1991), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992) ("Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the matter of its own accord despite the fact that its attention was prompted by an untimely filed motion"); *see also FDIC v. British American Corp.,* 744 F.Supp. 116 (E.D.N.C.1990); 2A William A. Moore and Jo Desha Lucas, *Moore's Federal Practice* ¶ 12.21. This Court certainly would consider whether a jury trial is available under ERISA before scheduling such a trial, and the motion concerning damages could have been brought as a motion for partial summary judgment. Therefore, the Court will consider the motions, though untimely, on their merits.

## A. *Defendants' Motion to Strike Demands for Extracontractual and Punitive Damages.*

The defendants move to strike the demands for extracontractual and punitive damages on the grounds that such damages have been precluded in ERISA cases by the United States Supreme Court in *Mertens v. Hewitt Associates,* 508 U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and by the Fourth Circuit Court of Appeals in *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir. 1990). The plaintiff reads these cases differently and cites to the Supreme Court's decision in *Ingersoll Rand Co. v. McClendon,* 498

U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which the Court stated that the compensatory and punitive damages sought by a plaintiff who alleged a wrongful discharge were "well within the power of federal courts to provide." *Id.* at 145, at 486.

The question of whether compensatory and punitive damages are available under ERISA has engendered much litigation, *see Jiminez v. Pioneer Diecasters,* 549 F.Supp. 677 (C.D.Calif.1980) (collecting the early cases), and this Court believes that, although such damages are not necessarily foreclosed in cases with the fact pattern of *Ingersoll–Rand, supra,* the great weight of authority and the political climate require reading ERISA to exclude them.

29 U.S.C. § 1132(a) sets forth various causes of action, describing the parties who would have standing to pursue that claim and the remedies available. The plaintiff has not specifically stated which section of § 1132(a) he is relying on as to the breach of fiduciary duty claims, having generally set out six of the nine subsections which describe available civil remedies. However, review of the subsections reveals that only two are applicable here [1]:

A civil action may be brought …

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

In *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the United States Supreme Court held that § 1132(a)(2) (§ 502 of ERISA) provides for relief only under § 1109, and that relief inures only to the plan itself, not to individual beneficiaries. It would not provide a cause of action for indi-

---

**1.** The other sections establish civil actions for failure to supply information, to recover benefits due, and permit suits by the Secretary of Labor and states in certain circumstances.

vidual beneficiaries for extracontractual damages. In his complaint, the plaintiff seeks to have the monies from the simulcast wagering restored to the plan and, presumably, he seeks these monies from the employer. He has, however, also named the Plan as a defendant and has asked the Court to award treble and punitive damages in the amount of two million dollars against the defendants jointly and severally. The Court must assume that these damages are sought for the individual plaintiff, and *Russell* precludes such an award.

In *Mertens v. Hewitt Associates*, 508 U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court foreclosed the opportunity for these damages under § 1132(a)(3), holding that the term "other appropriate equitable relief" would not include classic forms of legal relief such as compensatory or punitive damages. *See also Powell v. C & P Telephone*, 780 F.2d 419 (4th Cir.1985).

The plaintiff has specifically alleged that he is seeking to clarify his rights to future benefits under the terms of the Plan, a cause of action under § 1132(a)(1)(B). He points out that the Supreme Court has not addressed the availability of extra-contractual damages under this section and that the Fourth Circuit has not addressed the issue as to willful violations. In *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210 (4th Cir.1990), the Fourth Circuit examined § 1132(a)(1)(B) and found no language in the text to support a conclusion that it would give rise to extracontractual or punitive damages. The statute authorizes a civil action to recover benefits due, to enforce rights under the plan and to clarify rights to future benefits. These is no reference to any other type of relief, only restitution or a declaration of rights,[2] and *Reinking*, at 1220, held that extracontractual damages are not available in such an action.

■ The plaintiff is not entitled to extra-contractual damages under these sections of ERISA and the defendants' motion to strike

the claims for treble and punitive damage is hereby GRANTED.

### B. *Defendants' Motion to Strike Jury Demand.*

The defendants have moved to strike the plaintiff's jury demand, citing the decision of the Fourth Circuit Court of Appeals in *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003 (4th Cir. 1985), which held that an ERISA claim for breach of fiduciary duties in connection with an employee's claim for benefits is equitable in nature and is properly decided by a judge, not a jury. They cite a plethora of cases from other circuits and district courts for the same proposition. The plaintiff argues that the Seventh Amendment to the United States Constitution guarantees a jury trial, and citing *Chauffeurs Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), they argue that, since this case involves a contract interpretation of the Summary Plan Description, which is a legal issue, in addition to the equitable questions regarding fiduciary duties, *Terry* would entitle them to a jury. They further cite several district court cases which found a right to a jury trial in these circumstances.

■ While this Court finds these district court cases to be interesting, it is bound by the precedent in this circuit found in the *Berry* case, *supra*. This precedent has been confirmed recently in *Biggers v. Wittek Industries, Inc.*, 4 F.3d 291 (4th Cir.1993), in which the Fourth Circuit reversed a judgment based on a jury verdict after it found that the plaintiff's common law cause of action for breach of a contractual promise to pay severance benefits was really an ERISA action based on a welfare benefit plan. The sole issue was whether there had been a meeting of the minds as to the existence of a severance pay plan—a clear legal issue. The Fourth Circuit remanded the case for a bench trial. In the face of this precedent, this Court cannot imagine what facts arising

---

**2.** In 29 U.S.C. § 1132(g)(2), enacted at the same time as the other sections, Congress authorized liquidated damages and legal and equitable relief in actions by fiduciaries on behalf of a plan to collect delinquent contributions. Thus, it appears that Congress knew further remedies than it had allowed were available. If the fiduciaries were plaintiffs rather than defendants, the damages sought would be available.

under ERISA would entitle a party to a jury trial in this circuit.

The Court is bound by the precedent in the Fourth Circuit and the defendants' motion to strike the jury demand is GRANTED.

## III. *DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

The defendants assert that this Court lacks subject matter jurisdiction because the plaintiff has alleged activity which arguably constitutes an unfair labor practice over which the National Labor Relations Board ("NLRB") has exclusive jurisdiction. Indeed, in paragraph 45 of his first amended complaint, the plaintiff charges the defendants with having unilaterally changed retirement benefits, a mandatory subject of bargaining, during the term of a collective bargaining agreement. He alleges that this action would constitute a *per se* refusal to bargain in violation of 29 U.S.C. § 158(a)(5).

The defendants rely on the language of the United States Supreme Court in *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 552, 108 S.Ct. 830, 837, 98 L.Ed.2d 936 (1988):

> [W]hether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith is the kind of question that is routinely resolved by the administrative agency with expertise in labor law [NLRB]. There are situations in which judges must occasionally resolve labor issues, but they surely represent the exception rather than the rule. In cases like this, which involve either an actual or an "arguable" violation of § 8 of the NLRB, federal courts typically defer to the judgment of the NLRB.

■■■ The Court acknowledges that it would not have jurisdiction over activity that is arguably subject to § 7 or § 8 of the National Labor Relations Act, 29 U.S.C. § 157 or 158, and must defer to the judgment of the NLRB on those issues. *See San Diego Building v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

However, in enacting ERISA, Congress established a duty on the part of the employer to fund adequately the pension plans which it has established or for which it bargains and contracts. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984); *Trustees of the Colorado Pipe Industry Pension Trust v. Howard Electrical & Mechanical, Inc.*, 909 F.2d 1379, 1382 (10th Cir.1990). Claims to enforce this duty and claims for breach of fiduciary duties under ERISA are within the exclusive jurisdiction of the federal courts, 29 U.S.C. § 1132(e)(1), and the NLRB lacks jurisdiction to consider ERISA claims. *Martin v. Garman Const. Co.*, 945 F.2d 1000, 1003 (7th Cir.1991).

The Court is not persuaded that *Advanced Lightweight Concrete, supra*, requires dismissal of this case. The Supreme Court was looking at a narrow issue as to whether § 515 of ERISA (29 U.S.C. § 1145) could be used to determine whether an employer's unilateral decision to refuse to make post contract contributions was an unfair labor practice. The employer had refused to contribute to the multiemployer fund after the collective bargaining agreement had expired. The Supreme Court held that the remedies available under § 515 were limited to the collection of "promised contributions," and that post-contractual remedies had to remain within collective bargaining process is protected by labor law.

As noted above, this case does not involve a § 515 enforcement action; nor is this a post contract case. Even considering the broader implications of *Advanced Lightweight* in its deference to labor law, the Court finds that that deference goes to collective bargaining as opposed to the administrative agency's superior judgment. Further, the Supreme Court has been reluctant to expand the remedies of ERISA beyond the precise language of Congress. *Advanced Lightweight Concrete, supra* 484 U.S. at 547–48, 108 S.Ct. at 835, and 553, 108 S.Ct. at 838; *Mertens v. Hewitt Associates, supra.*

■■■ Here, the gravamen of the plaintiff's complaint is that the employer has failed to fund the pension plan as required by the collective bargaining agreement and the

Summary Plan Description and that this failure constitutes a breach of fiduciary duty under ERISA. The Collective Bargaining Agreement contains no reference to the calculation of the contribution, but states only that the parties agree to be bound by and to implement the Shenandoah Race Track Employees Pension Plan, as amended, including the Trust Agreement establishing the fund. The Summary Plan Description and the preamble to the Shenandoah Plan are the documents in conflict here, and no interpretation of the Collective Bargaining Agreement will be required. Further, the terms of the Agreement were not modified before its expiration[3], but the Summary Plan Description was modified. Thus, although there may be an arguable unfair labor practice, the heart of this case is in ERISA. The contractual interpretation and the federal law involved do not require initial adjudication by the NLRB. *Martin v. Garman Const. Co.,* supra at 1005. Cf. *Hood v. Smith's Transfer Corp.,* 762 F.Supp. 1274 (W.D.Ky.1991); *Painters' Pension Trust Fund v. Manganaro Corp.,* 693 F.Supp. 1222 (D.D.C.1988).

The defendants candidly concede the Supreme Court's holding in *Connell Construction Co. v. Plumbers & Steamfitters,* 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975), that "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." It would appear that the unfair labor practice charge in Paragraph 45 of the complaint is such a collateral issue. In a letter buttressing his opposition to the motion to dismiss, the plaintiff has pointed out that the NLRB would "not assert jurisdiction in any proceeding under Sections 8, 9 and 10 of the Act involving the horseracing and dog racing industries." 29 C.F.R. § 103.3. The defendants responded, in a letter, that the regulation means that the proper forum for the unfair labor practice charge in this racetrack case lies with the

state, not the NLRB. The parties have not fully briefed the issue[4] but the defendants have cited *Eatz v. The DME Unit of Local Union No. 3 of the International Brotherhood of Electrical Workers AFL–CIO,* 973 F.2d 64 (2d Cir.1992). In that case, involving a breach of duty of fair representation, the Second Circuit held that the NLRB's decision to decline jurisdiction over the horseracing industry was based on the industry's minimal impact on interstate commerce, and would therefore deprive federal courts of jurisdiction. The proper forum would be state courts applying state law. *See New York Racing Ass'n, Inc. v. NLRB,* 708 F.2d 46, 48 (2d Cir.1983) (Board issued explanatory statement that the "states exercised extensive control over the horse racing and dog racing industries, including some aspects of labor relations"). *But cf. Pari–Mutuel Clerks Union of La. v. Fair Grounds Corp.,* 703 F.2d 913 (5th Cir.1983) (suit in breach of collective bargaining agreement under § 301 of the Labor Management Relations Act is properly in federal court despite NLRB's refusal to assert jurisdiction).

Relying on *Eatz supra,* the defendants argue that since the plaintiff's unfair labor practice charge is a state cause of action, it would be pre-empted by § 514(a) of ERISA, 29 U.S.C. § 1144(a) and should be dismissed. However, section 514(a) by its own terms pre-empts state laws "as they may now or hereafter relate to any employee benefit plan. . . ." The West Virginia statute regarding unfair labor practices, W.Va.Code § 21–1A–1 et seq. is expressly patterned after the National Labor Relations Act, 29 U.S.C. §§ 151–166, and does not regulate employee benefit plans. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987).

Without pre-emption, the state labor law gives the plaintiff a cause of action similar to

---

3. The Agreement (attached to Plaintiff's First Amended Complaint as Exhibit 1) states that it would be in effect from January 1, 1989 to December 31, 1991 and from year to year thereafter unless either party gave notice of termination. The Court has not been informed that such notice has been given, and believes that the Contract was in effect.

4. Both parties agreed to file memoranda of law on the issue if the Court deemed it necessary. Given the paucity of law on the issue, such briefing would be expensive and unhelpful.

the § 158 unfair labor practice charge. While *Eatz* would require that such a cause of action be tried in a state forum, this Court sees no reason that it cannot accept supplemental jurisdiction of the state law claim where the issues and facts are intimately bound with the federal law question under ERISA, 28 U.S.C. § 1367(a), and decide the issue as a collateral one under the authority of *Connell Construction, supra.* It is, therefore, ORDERED that the defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

## IV. *MOTION TO DISMISS THE PLAN*

Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan seeks to be dismissed as a defendant in this case on two grounds: 1) that it is not a fiduciary under ERISA and cannot be sued for a breach of fiduciary duty, nor is it a proper party to an unfair labor practice charge; and 2) the plaintiff has not requested a remedy that can be enforced against the Plan. In the response brief, the plaintiff concedes that they are not charging the plan with a breach of fiduciary duty or an unfair labor practice.

The only question before the Court is whether the plaintiff has stated a cause of action or requested a remedy against the Plan. In the first amended complaint at Paragraph 47, the plaintiff has stated that he seeks to enforce his rights under the terms of the Pension Plan and to clarify his rights to future benefits under the terms of the Plan. Paragraph 47 obviously tracks the language of ERISA at 29 U.S.C. § 1132(a)(1)(B).

 The plaintiff relies on the decision in *Acosta v. Pacific Enterprises,* 950 F.2d 611 (9th Cir.1991), in which the Ninth Circuit held that the plan was a proper party in a breach of fiduciary duty case, where the remedy the plaintiff sought against the Plan was to obtain information about his personal rights under the Plan. The defendants point out a seemingly contrary Ninth Circuit opinion, *Mertens v. Black,* 948 F.2d 1105 (9th Cir.1991), wherein the Plan was dismissed because the recovery was sought to benefit the Plan and the Plan's interests were not

adverse to the interests of the plaintiff. These two cases illustrate that there is no bright line, but that a close consideration of the facts is needed. The plaintiff here has vaguely alleged a cause of action under § 1132(a)(1)(B), but the only specificity he can offer is that "if the Court determines that a portion of the proceeds from the simulcast wagering handle should have been paid into the Plan, the plaintiff will receive an increased amount of benefits once he retires." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, page 4. The Court believes that the receipt of the increased benefits will automatically follow if the Court determines that the portion of proceeds from the simulcasts should be paid to the Plan, without a separate enforcement or clarification of rights as to the Plan. The purpose of this lawsuit is to increase the funds available to the Plan to be distributed to the participants and beneficiaries, not to redefine the distribution or obtain information. Rather than being adverse, the interests of the Plan are aligned with those of the plaintiff. If the plaintiff is successful on the merits of his case against the employer and against the Plan's trustees, the Court can fashion a complete remedy even in the absence of the Plan itself.

It is, therefore, ORDERED that the Plan's motion to dismiss is GRANTED and the Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan is hereby DISMISSED as a defendant in this case.

## V. *MOTION FOR CLASS DETERMINATION*

The plaintiff seeks certification of a class defined as follows:

> All current vested and retired employees of Charles Town Races, Inc. who are participants in the Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan, Profit–Sharing Plan.

The defendants argue that neither the class nor the case meet the requirements for certification.

Fed.R.Civ.P. 23 establishes a two-step analysis for class certification. Under Rule 23(a), an action must meet all four of the following criteria: (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses of the class representative; and (4) adequacy of representation. If all of the (a) criteria are met, the next step demands that the action fall into one of three categories listed under Rule 23(b). Section (b)(1) is applicable if individual adjudication would prejudice either party; section (b)(2) covers suits for injunctive or declaratory relief; and section (b)(3) is applicable where there are common issues of law or fact and a class action would be superior to any other procedure for fairness and efficiency. *In re A.H. Robins, Co.,* 880 F.2d 709 (4th Cir.1989).

The defendants first argue that the proposed class is ambiguous and both over-inclusive and under-inclusive. Specifically, they point out that the class does not include certain partially vested or non-vested employees or those employees who are not retired, or beneficiaries of the Plan who were not employees. The Court agrees that the proposed class would not include a number of people who would benefit by increased contributions to the plan, but finds that the class could easily be redefined, for example, to include "all participants and beneficiaries of the Charles Town Racing Limited Partnership Race Track Employees Future Service Retirement Plan, Profit–Sharing Plan," but will ask for further briefing on the issue if the class action is otherwise appropriate. Similarly, the Court can order that particular issues, like the unfair labor practice charge, can be maintained separately, or a sub-class be developed, pursuant to subsection 23(c)(4).

In their opposition to the motion, the defendants, for the first time, argue that the plaintiff lacks standing to sue an employer for delinquent contributions and, therefore, would not appropriately represent the interests of the class. They do acknowledge, however, that the plaintiff's suit against the employer may be maintained on a derivative basis, as they are suing to benefit the plan. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 287 (2d Cir.1992); *Struble*

*v. N.J. Brewery Employees' Welfare Trust Fund,* 732 F.2d 325 (3d Cir.1984). The defendants then argue that the claimants had to make a demand on the trustees to initiate the civil suit to collect the delinquent contributions.

In *Diduck, supra,* the Second Circuit Court of Appeals noted that the enforcement of such contributions are ordinarily the function of the Trustees, and in an action by the participants and beneficiaries of the Plan, against an employer, it held that the requirements of Fed.R.Civ.P. 23.1 apply. Rule 23.1 requires that the complaint describe with particularity the efforts made to obtain relief from the directors or comparable authority.

 In this case, the plaintiffs sought to determine whether the employer was contributing the appropriate amount from the simulcast races. In response, the Trustees amended the Plan to require the contribution only for races *conducted by the employer,* precluding any attempt through the Plan to collect the simulcast contributions. On these facts, the Court holds that the plaintiffs made adequate efforts to obtain relief from the trustees and any further efforts would have been futile. See *Kaster v. Modification Systems, Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984). Thus, the plaintiffs have standing to pursue claims against the employer, for the benefit of the Plan, in a representative capacity.

Turning now to the requirements of Rule 23(a), the Court finds that an appropriate class would meet the criteria for numerosity. The plaintiff states, and defendants do not disagree, that the class sought, of all current vested and retired employees, numbers over 100, and if the Court adds all participants and beneficiaries the number could only increase. Certainly, joinder of all members is impracticable. There is only one major question of law and issue of fact, whether the contributions should be made based on the simulcast races, and that is common to all the participants and beneficiaries. Only the amounts due to each will vary. The claims of Joseph Farrie are typical of the claims of all the employees who are set to benefit from increased contributions to the Plan, and as the entire recovery in this case, except for attorney fees and costs, will benefit the Plan,

the representative can fairly and adequately protect the interests of the class. Thus, the criteria of Rule 23(a) are met.

The plaintiff then argues that this class action, if maintained, would meet the further criteria of Rule 23(b)(3), which requires a determination that the questions of law and fact are common to each member and that the class action is far superior to other available methods for the fair and efficient adjudication of the controversy. The Court has already determined the commonality issue in favor of the class. However, the Court is not persuaded that the class action is superior to other types of actions. As the defendants note, the action against the employer is derivative and any recovery from the entire case will inure to the benefit of the Plan, and through it, to the benefit of all of the participants and beneficiaries. Maintenance of a class action would create additional complication and expense, and may not be necessary, as the issue is simple and determinative.

On the other hand, this case clearly fits the requirements of Rule 23(b)(2), that is, that the party opposing the class has refused to act, to pay or to require payment of certain contributions, on grounds generally applicable to the class, and relief would be appropriate to the class as a whole. Rule 23(b)(1) may also be applicable here to avoid inconsistent or varying adjudications with respect to individual members of the class conducting separate prosecutions, possibly establishing "incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A).

■ The Court, therefore, GRANTS the motion to determine a class, but will not certify the class until an inclusive class definition can be prepared. The plaintiff is directed to prepare a new definition to be submitted to the Court within forty-five 45 days of the date of this order.

## VI. CONCLUSION

For the reasons stated, the defendants' motions to strike the plaintiff's demand for punitive and treble damages and for a jury trial are GRANTED; the defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED; the motion to dismiss the

Charles Town Racing Limited Partnership Race Trace Employees Future Service Retirement Plan is GRANTED and that party is DISMISSED as a defendant in this case; the plaintiff's motion to determine a class is GRANTED and the plaintiff is directed to redefine the class within forty-five (45) days of the date of this order.

It is so ORDERED.