Jean B. WILLIAMS, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

Civil Action No. 96–799–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 9, 1996.

Randolph D. Frostick, Cheryl A. Duncan, Vanderpool, Frostick & Massey, P.C., Manassas, VA, Bernard M. Dworski, Alexandria, VA, for plaintiff.

Robert W. Hesselbacher, Jr., Semmes, Bowen & Semmes, P.C., Baltimore, MD, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents an issue that has inspired little judicial consensus, namely, whether a plaintiff is entitled to a jury trial when seeking to recover payments allegedly due her under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

### I.

On August 1, 1990, defendant UNUM Life Insurance Company of America ("UNUM") issued plaintiff Jean B. Williams a certificate of insurance pursuant to a Group Long Term Disability Insurance Policy Contract (the "Plan") with her then employer, Capitol Realty Limited Partnership d/b/a Prudential Preferred Properties ("PPP"). Both parties admit that the Plan was an "employee welfare benefit plan" within the meaning of ERISA. Under the terms of the Plan, UNUM was obligated to pay Williams certain monthly benefits in the event she became disabled and unable to perform each of the material duties of her regular occupation and remained so disabled after an initial six-month "elimination" period. The Plan also stated that if Williams had attained the rank of PPP vice president before becoming disabled, these payments would continue until Williams' 65th birthday, provided she remained disabled until that time.

On March 31, 1994 Williams' physician certified that Williams was disabled and, as a result, could no longer perform her duties as PPP Vice President and Branch Manager. Thereafter, Williams filed a claim with UNUM for long-term disability benefits under the Plan. UNUM agreed Williams was entitled to receive benefits, and accordingly began making monthly payments after the elimination period expired on October 1, 1994.[1]

Since then, Williams has continued to furnish UNUM with medical certification documenting her disability. In addition, at UNUM's request she submitted to an evaluation by UNUM's occupational abilities specialist, who also concluded that because of Williams' disability she could no longer perform her regular occupation. Nonetheless, UNUM terminated the payment of long-term disability benefits to Williams on December 13, 1995. She filed this action on June 10, 1996. Her amended complaint alleges that (1) UNUM has wrongfully denied her benefits under the Policy, in violation of ERISA, and (2) in the course of denying her benefits, UNUM has also failed to act in good faith with regard to her claim. In the motion at bar, UNUM challenges only Williams' right to a jury trial on these claims.

### II.

ERISA provides plan participants and beneficiaries with four principal causes of

---

1. These payments were initially $10,000 per month, the maximum monthly benefit under the policy. After the Social Security Administration ruled that Williams was completely disabled and eligible to receive monthly social security disability benefits of $1,158, UNUM reduced its monthly benefit payments to Williams by that SSA amount.

action.[2]  A participant or beneficiary may bring a civil action:

(1) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B);

(2) against a fiduciary of the plan for breach of fiduciary duty, 29 U.S.C. § 1132(a)(2);

(3) "to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan", 29 U.S.C. § 1132(a)(3); and

(4) against any person who interferes with the exercise of any rights which the participant or beneficiary is entitled to under ERISA or the terms of the benefits plan, 29 U.S.C. § 1140.[3]

Williams seeks relief under the first of these provisions, making a claim for the wrongful denial of benefits pursuant to § 1132(a)(1)(B).  Because this claim is essentially a breach of contract action, Williams maintains she is entitled to a jury trial.

Before 1989, courts generally agreed that ERISA claims were not triable to a jury. For ERISA claims within categories (2) through (4), this result is undisputably correct, as these three categories of causes of action are plainly limited to equitable relief.[4] But the same cannot be said for the first category of claims, namely those brought pursuant to 29 U.S.C. § 1132(a)(1)(B). Because many of these claims appear to be legal in nature, the courts, especially since 1989, have not been uniform on whether a right to a jury trial attaches.[5]

The earliest notable treatment of this issue appears in *Stamps v. Michigan Teamsters Joint Council No. 43*, 431 F.Supp. 745 (E.D.Mich.1977), which held that jury trials were available in actions under § 1132(a)(1)(B) to recover ERISA plan benefits, because such suits stated a legal claim for breach of contract. *Id.* at 747. Noting the absence of explicit direction in ERISA, the district court in *Stamps* based its conclusion on an interpretation of Congressional intent,[6] and an analysis of the legislative history.[7] Yet soon thereafter, various circuit courts reached a different result. First, the Seventh Circuit rejected the reasoning of

---

**2.** This recital of ERISA private causes of action is not exhaustive; for example, it does not include provisions allowing enforcement of reporting requirements or penalties for refusal to supply required information. *See* 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(4).

**3.** This section incorporates the remedy provisions of section 502 of ERISA, 29 U.S.C. § 1132. Therefore, enforcement of section 510, 29 U.S.C. § 1140, may be sought through the provisions of section 502(a)(3). *See Spinelli v. Gaughan,* 12 F.3d 853, 856 (9th Cir.1993).

**4.** Claims pursuant to § 1132(a)(3) and § 1140, which adopts the enforcement provision of § 1132(a)(3), *Spinelli,* 12 F.3d at 856, are textually limited to injunction or other equitable relief, and, as such, were viewed inappropriate for jury determination. Relief under § 1132(a)(2) was likewise viewed as generally equitable in nature, requiring a determination of the existence of a breach of a fiduciary duty. *See, e.g., Browning v. Grote Meat Co.,* 703 F.Supp. 790 (E.D.Mo.1988).

**5.** For example, compare *Hulcher v. United Behavioral Systems, Inc.,* 919 F.Supp. 879 (E.D.Va. 1995) (jury trial available for claim under § 1132(a)(1)(B); *Vaughn v. Owen Steel Company, Inc.,* 871 F.Supp. 247 (D.S.C.1994) (same); *Dawes v. First Unum Life Insurance Co.,* 851 F.Supp. 118 (S.D.N.Y.1994) (same); with *Ellis v. Metropolitan Life Ins. Co.,* 919 F.Supp. 936 (E.D.Va.1996) (no jury trial for claim to recover benefits); *Farrie v. Charles Town Races, Inc.,* 901 F.Supp. 1101 (N.D.W.Va.1995) (same); *Quesinberry v. Individual Banking Group Acc. Ins. Plan,* 737 F.Supp. 38 (W.D.Va.1990), *aff'd,* 987 F.2d 1017 (4th Cir.1993) (right to trial by jury not raised on appeal).

**6.** The *Stamps* court concluded that reading subsection (a)(1)(B) to provide only equitable, not legal, remedies might well render that subsection superfluous to the equitable remedies of subsection (a)(3). 431 F.Supp. at 747.

**7.** The legislative history cited in *Stamps* indicated that ERISA actions under § 1132 should be guided by case law developments under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, under which an employee suing for money damages for a breach of a collective bargaining agreement is entitled to a jury trial. *Stamps,* 431 F.Supp. at 746.

*Stamps* in *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).[8] This was followed by an avalanche of cases denying the right to a jury trial in actions arising under § 1132(a)(1)(B).[9] The Fourth Circuit was also part of this chorus. Thus, in *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003 (4th Cir.1985), the Fourth Circuit stated flatly that "proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury." *Id.* at 1007.[10] *Berry,* would then seem to foreclose debate on this issue.

Yet analysis cannot end with *Berry,* for only four years after *Berry,* a watershed of sorts occurred with the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Although this decision did not directly address the availability of jury trial, it made observations about the nature of certain ERISA actions that are relevant to the jury trial issue. Before *Firestone,* there had been general agreement

that the pervasive influence of trust law in ERISA mandated the conclusion that actions under this statute were all equitable in nature. While not mentioning the right to a jury trial, the Supreme Court in *Firestone* found that certain § 1132(a)(1)(B) ERISA claims were historically based on and derived from contract law precepts, which of course, are essentially legal in nature, not equitable. The recognition that ERISA might include claims properly viewed as essentially legal opened the door for courts to reexamine whether the Seventh Amendment compelled jury trials for such claims.[11]

The results of this reexamination, as noted, have not been uniform.[12] While *Berry's* foundations are arguably called into doubt after *Firestone,*[13] it appears, at first blush, that the Fourth Circuit, in a post-*Firestone* decision, has again come down on the side of denying a jury trial in § 1132(a)(1)(B) ERISA actions. *See Biggers v. Wittek Industries, Inc.,* 4 F.3d 291 (4th Cir.1993). Yet, close inspection of *Biggers* suggests this overstates the significance of the decision. To begin with, the reference to the jury trial

**8.** The *Wardle* court was unpersuaded by either argument advanced by the district court in *Stamps,* finding (1) that there was a jurisdictional reason for splitting subsections (a)(1)(B) and (a)(3) and, therefore, that reading subsection (a)(1)(B) as providing only an equitable remedy does not render it superfluous; and (2) the legislative history demonstrates only that courts were to develop a federal common law for ERISA claims in the same manner as LMRA claims, not that identical rules were to be applied. *Wardle,* 627 F.2d at 829.

**9.** *See Calamia v. Spivey,* 632 F.2d 1235 (5th Cir. 1980); *In re Vorpahl,* 695 F.2d 318 (8th Cir. 1982); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Turner v. CF & I Steel Corp.,* 770 F.2d 43 (3rd Cir.1985), *cert. denied* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

**10.** This determination was informed by two factors. First, the court found that the proper standard of review for actions of plan administrators was "arbitrary and capricious." *Berry,* 761 F.2d at 1006. Given this, it followed that the issue was for a judge, not a jury, for the task of deciding whether a fiduciary has acted arbitrarily or capriciously, "while second-nature to a judge, is not readily communicated to jurors."

*Id.* at 1006–07. Further, the panel found that Congress' silence on the availability of a jury trial referred this question to the law of trusts, the framework upon which much of ERISA was based. The Fourth Circuit concluded that under the law of trusts, proceedings to determine rights under employee benefit plans are equitable and, therefore, to be determined by judges. *Id.* at 1007.

**11.** *See, e.g., Spinelli,* 12 F.3d at 855–56 (applying Seventh Amendment analysis to claims brought under 29 U.S.C. § 1140); *Blake v. Unionmutual Stock Life Ins. Co. of America,* 906 F.2d 1525, 1526 (11th Cir.1990) (applying Seventh Amendment analysis to claim pursuant to 29 U.S.C. § 1132(a)(1)(B)).

**12.** *See supra,* note 5.

**13.** The first basis of *Berry,* that the determination of "arbitrary and capricious" is a matter for a judge, does not control claims brought under a plan that confers no discretion on the administrator, which after *Firestone,* are properly reviewed *de novo. Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57. The *Berry* court also relied on the application to ERISA of the common law of trusts, proceedings under which "are equitable in character." 761 F.2d at 1007. Yet *Firestone* implies that some actions for recovery of benefits are not equitable in character.

in *Biggers* was *dicta*, as the issue was not there squarely presented or decided. Indeed, there was no mention or discussion of *Firestone* or the Seventh Amendment.[14] Instead, in remanding a case that had been tried to a jury under Illinois law, the *Biggers* panel merely noted, without analysis, that the claim there in issue was governed by ERISA, not Illinois law, and should be tried to the court, not a jury. *See Biggers*, 4 F.3d at 298. In sum, because neither *Berry* nor *Biggers* seem dispositive,[15] the task at hand is to determine whether *Firestone*'s implications and the Seventh Amendment's commandment compel a result here different from that reached in *Berry* and suggested in *Biggers*.

## III.

### A. Firestone

In the absence of clear legislative direction on this issue, pre-*Firestone* courts had generally adopted the "arbitrary and capricious" standard to review determinations of benefit eligibility made by plan administrators. *Firestone*, 489 U.S. at 109, 109 S.Ct. at 953–54. Yet, after reviewing the parameters of this review, and the purposes of ERISA, the Supreme Court rejected this standard for reviewing decisions where no discretion is conferred on the plan fiduciary. *Id.* at 115, 109 S.Ct. at 956–57. The Supreme Court's analysis begins with the recognition that actions to recover plan benefits prior to ERISA were governed by established contract law principles. *Id.* at 112–13, 109 S.Ct. at 955–56. Next, the Supreme Court observed that just as with any other contract claim, judicial review of administrator actions in cases where the plan conferred no discretion on the administrator was *de novo*, with the court "looking to the terms of the plan and other manifestations of the parties' intent." *Id.* The Supreme Court further observed that ERISA was enacted to promote interests of employees as well as to protect contractually defined benefits. *Id.* at 113, 109 S.Ct. at 955–56 (*citations omitted*). They refused to adopt an "arbitrary and capricious" standard for judicial review of all ERISA claims for a recovery of benefits, a "reading of ERISA . . . that would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* at 113–14, 109 S.Ct. at 955.

In summary, *Firestone*'s implications for the ERISA jury trial issue are twofold. First, *Firestone* teaches that some ERISA claims are rooted in the law of contracts, and thus seemingly legal rather than equitable in nature. And second, *Firestone* reminds courts that ERISA should not be read to "afford less protection" to plan beneficiaries than they enjoyed prior to ERISA. This reference to protection arguably includes the right to a jury trial for certain contractual claims for plan benefits.[16] Viewed in this way, *Firestone* invites courts to reexamine whether juries may be required in certain ERISA claims because they are essentially legal claims that, prior to ERISA, would have been tried to a jury pursuant to the Seventh Amendment.

### B. The Seventh Amendment

■ Pre–1989 cases denying jury trials for ERISA claims typically paid only cursory

---

14. It has been suggested that the failure of the *Biggers* panel to conduct a Seventh Amendment analysis indicates that despite *Firestone*, such analysis is not required in ERISA cases. *Ellis*, 919 F.Supp. at 938. Given the importance of the Seventh Amendment, and the fact that the right to a jury trial was not directly before the *Biggers* court, it is not persuasive that this silence should be construed to reflect a considered determination that the Seventh Amendment does not apply in ERISA cases.

15. *Accord Hulcher v. United Behavioral Systems, Inc.*, 919 F.Supp. 879, 883 (E.D.Va.1995); *Vaughn v. Owen Steel Co., Inc.*, 871 F.Supp. 247, 249 (D.S.C.1994). *Contra Ellis v. Metropolitan Life Ins. Co.*, 919 F.Supp. 936 (E.D.Va.1996); *Quesinberry v. Individual Banking Group Accident Ins. Plan*, 737 F.Supp. 38 (W.D.Va.1990), *aff'd*, 987 F.2d 1017 (4th Cir.1993) (right to trial by jury not raised on appeal).

16. In *Hulcher*, Judge Merhige concluded that "it is clear that the *overall* goal of *Firestone* was to return to plan participants the pre-ERISA protection afforded them under contract law principles, . . . and there can be no doubt that a trial by jury was part of that pre-ERISA scheme." 919 F.Supp. at 883 n. 5.

attention to the Seventh Amendment.[17] *Firestone*, as noted, suggests indirectly that this is mistaken. But *Firestone* is not alone in this regard. Not long after *Firestone*, the Supreme Court in *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), reaffirmed its commitment to preserving the right to a jury trial "where legal rights are at stake." *Id.* at 565, 110 S.Ct. at 1344. In order to determine when legal rights are at stake in a particular action, an inquiry must be made into (1) the nature of the issues involved, and (2) the remedy sought. *Id.* More particularly:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

**17.** *See, e.g., In re Vorpahl*, 695 F.2d at 322 (claims for present and future benefits have been viewed as equitable in nature and triable by court); *Wardle*, 627 F.2d at 830 n. 21 ("In light of our conclusion above that this claim is equitable, no further discussion is necessary to reject [Seventh Amendment] argument."); *see also Berry*, 761 F.2d 1003 (no discussion of Seventh Amendment); *Calamia*, 632 F.2d 1235 (same).

**18.** In the Supreme Court's words, " '[l]egal claims are not magically converted into equitable issues by their presentation to a court of equity,' ... nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989) (*quoting Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, ——, 24 L.Ed.2d 729 (1970)). In *Granfinanciera*, the Supreme Court considered a suit regarding the alleged fraudulent transfer of funds in a bankruptcy proceeding. The Eleventh Circuit held that the Seventh Amendment required no jury trial because such actions to recover fraudulently transferred funds were inherently equitable, "even when a plaintiff seeks only monetary relief." *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1349 (11th Cir.1988). The Supreme Court reversed and applied the traditional Seventh Amendment analysis, focusing on the nature of the issue and the remedy. This inquiry led the Supreme Court to conclude ultimately that the plaintiff's claims were legal, not equitable, thereby entitling him to a jury trial.

**19.** *Terry* well illustrates the depth and rigor of analysis required. There, the majority concluded

*Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987). Of the two inquiries, the second is more important. *Terry*, 494 U.S. at 565, 110 S.Ct. at 1344–45.

The Seventh Amendment issue is not resolved merely by asserting that a claim is equitable.[18] Rather, *Terry* teaches that courts must look beyond simple categorizations, to the nature of both the issue presented and the remedy.[19] In sum, every claim under ERISA § 1132(a)(1)(B) merits individual analysis under the Seventh Amendment. This inquiry can be quickly disposed of in many instances, where analysis reveals a § 1132(a)(1)(B) action to be clearly equitable.[20] Nevertheless, *Firestone* and the Seventh Amendment mandate examination of individual ERISA claims to recover benefits in order to assess whether a particular claim is legal thereby entitling claimant to a jury trial.[21]

that the nature of a claim for a breach of the duty of fair representation was more like a trust action than an attorney malpractice action, which was traditionally an action at law. 494 U.S. at 568, 110 S.Ct. at 1346–47. But the analysis did not end there. Indeed, the trust analogy failed to persuade a plurality of the Court that the employee's claims were "wholly equitable." *Id.* at 569, 110 S.Ct. at 1346. Moreover, a majority held that (1) this trust-like claim required the same proof required to make out employee's claim under LMRA § 301 for breach of a collective bargaining agreement, a contract like claim; and (2) the remedy sought (backpay) was legal in nature. *Id.* at 564, 573, 110 S.Ct. at 1344, 1349. These factors led the majority to conclude that the employee was entitled to a jury trial on all issues in the suit. *Id.*

**20.** For instance, where an ERISA plan confers discretion on a plan administrator in the distribution of benefits, *Firestone* teaches that the appropriate judicial review standard is arbitrary and capricious, not *de novo*. And, of course, a claim requiring a determination of whether an administrator acted arbitrarily and abused her discretion is an equitable matter properly decided by the court.

**21.** This conclusion is at odds with *Blake*, where the Eleventh Circuit found the required remedy to be equitable for all § 1132(a)(1)(B) claims even though the claim there in issue sought only money damages due and owing. 906 F.2d at 1526. In other words, *Blake* apparently takes the view that all ERISA benefits claims are equitable and triable only to the court. In this opinion, a different result is reached based on princi-

142

## IV.

It remains only to apply these principles to the case at bar. And in this regard, analysis appropriately begins with an examination of the nature of the claim made.

Williams sues pursuant to ERISA § 1132(a)(1)(B), which authorizes civil actions to recover benefits due under the terms of an ERISA plan. To prevail, she must show that the Plan administrator erred in finding her ineligible for benefits. As the parties agreed at oral argument, the Plan here conferred no discretion on the administrator in connection with this decision. Given this, the administrator's denial of benefits must be reviewed *de novo*, and the issues to be determined are: (1) whether Williams is covered by the Plan, (2) whether Williams is disabled within the meaning of the Plan so as to trigger the payment of benefits, and (3) the proper amount of benefits. These are factual determinations typical of legal contract actions,

and well within a jury's ability to resolve.[22] In sum, Williams' claim is essentially analogous to a breach of contract action at law. *See Hulcher*, 919 F.Supp. at 884.[23] But this is only half of the equation and the less important half at that. Thus, the analysis must now turn to the nature of the remedy sought, the more important of the two prongs of the Seventh Amendment inquiry. *See Terry*, 494 U.S. at 565, 110 S.Ct. at 1344–45.

■ Williams seeks money damages of $618,507.[24] This amount includes more than the benefits Williams claims are due and owing; it also includes the present value of future benefits she contends she is entitled to under the plan.[25] Such an award of future benefits is not typically available under ERISA given that circumstances may change affecting her eligibility for benefits. Instead, if she prevails in her claim for benefits, Williams may recover money damages for

ples expressed in *Firestone* and the Seventh Amendment cases. *See supra* notes 16–19 and accompanying text.

22. This conclusion finds support in the Supreme Court's observation in *Firestone* that:

Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent.

*Firestone*, 489 U.S. at 112–13, 109 S.Ct. at 955–56. Further support for the notion that some § 1132(a) claims may be legal in nature may be found in *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 486, 112 L.Ed.2d 474 (1990), where the Supreme Court found that federal courts adjudicating § 1132(a) claims have the power to grant the relief requested even where this relief goes beyond "pension benefits" to include such legal remedies as punitive and compensatory damages. *See also Vaughn*, 871 F.Supp. at 250 (relying in part on *Ingersoll–Rand* to find that § 1132(a)(1)(B) claims are legal). To be sure, *Ingersoll–Rand* is controversial in this regard. *Compare International Union of United Automobile Workers v. Midland Steel Products Co.*, 771 F.Supp. 860, 864 (N.D.Ohio 1991) ("[The Supreme Court's] decision in *Ingersoll–Rand* indubitably quashes the argument that actions under ERISA are strictly equitable."); with *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822, 827–28 (10th Cir.1995) (refusing to interpret

*Ingersoll–Rand* to permit ERISA remedies beyond unpaid benefits).

23. Defendant correctly points out that *Hulcher* relied in part on *Sullivan v. LTV Aerospace & Defense Co.*, 850 F.Supp. 202 (W.D.N.Y.1994), which the Second Circuit overruled on the jury trial issue. *Sullivan*, 82 F.3d at 1257–59. Yet, the Second Circuit did not attack or, indeed, even address the district court's conclusion that an ERISA suit to recover plan benefits wrongfully withheld was analogous to a conventional breach of contract suit. And this is understandable as this conclusion hardly seems controversial. Instead, the Second Circuit criticized *Stamps*, conducted no Seventh Amendment analysis, and found persuasive a factor not present here, namely that the discretion vested in the plan administrator in that case would require review under an arbitrary and capricious standard. *Sullivan*, 82 F.3d at 1258–59 (citing *Berry*, 761 F.2d at 1006–07).

24. The fact that only monetary relief, a legal remedy, is requested does not end the inquiry. *See, e.g., Hulcher*, 919 F.Supp. at 884 ("[T]he mere existence of a claim for monetary redress in no way compels an automatic determination that Plaintiff's action is legal.... To the contrary, the Court is bound to examine the *nature* of the relief sought by Plaintiff.") (citing *Terry*).

25. Williams' benefits of $8,842 per month were terminated approximately 8.5 months ago. Thus at this time, approximately $75,157 plus interest is attributable to disability benefits allegedly due and owing.

benefits due and owing and she may further obtain a declaratory judgment that she is entitled to future disability benefits provided circumstances concerning her eligibility do not change. This is quite significant, of course, because a declaratory judgment entitling a plan participant to future benefits is governed by equitable principles [26] and is analogous to a remedy in trust where a fiduciary is ordered to pay obligations mistakenly withheld.[27] Taken as a whole, then, the nature of the remedy here requested is substantially equitable. Given this and given the greater importance of the remedy factor in the Seventh Amendment calculus, it follows that Williams' claim should be tried to the Court and not a jury.

Accordingly, defendant UNUM's motion to strike Williams' jury demand must be granted and an appropriate order will enter.[28]

26. *See, e.g., Eccles v. Peoples Bank of Lakewood Village,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948) ("A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion.").

27. Williams observes that in *Dawes v. First Unum Life Insurance Co.,* 851 F.Supp. 118 (S.D.N.Y.1994), the district court found "no reason to differentiate between present and future benefits" with respect to whether a plaintiff was entitled to a jury trial. *Id.* at 121. But the reasoning in *Dawes* is not persuasive. *Dawes* concentrates almost exclusively on the nature of the issues confronted in a claim to recover benefits. Discussion of the nature of the remedy consists of the mere assertion that the remedy in a suit to recover either present or future benefits is money damages. *Id.* Moreover, *Dawes* did not conduct a Seventh Amendment analysis, relying instead on Second Circuit decisions elaborating a statutory right within ERISA to a jury trial. *Id.*

28. The Court will consider at trial whether to empanel an advisory jury. This course of action has the advantage of ensuring that no retrial would be required whatever might be the appellate disposition of this issue.