**Danny R. SMITH, Theresa K. Smith, and Claudette Nicole Smith, by her Guardian Ad Litem, Theresa K. Smith, Plaintiffs,**

v.

**COHEN BENEFIT GROUP, INC., Defendant.**

No. 3:92CV21.

United States District Court, M.D. North Carolina, Rockingham Division.

Oct. 20, 1993.*

* Appeal to Fourth Circuit Ct. of Appeals—dismissed Dec. 20, 1993.

Woodrow Gunter, Tamela Clayton, Rockingham, NC, for plaintiffs.

Richard Titus, Cary, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiffs move the Court to remand this case to the North Carolina General Court of Justice. Defendant moves for summary judgment on all issues. For the reasons stated below, Plaintiffs' Motion to Remand is GRANTED. Defendant's Motion for Summary Judgment is DENIED.

### I.

Plaintiff Danny R. Smith has been employed since 1984 by Hamlet Hospital in Hamlet, North Carolina.[1] His daughter,

Nikki, born in 1980, is totally disabled due to lissencephaly, a brain disorder.

Health Management Associates, Inc. (HMA) Purchased Hamlet Hospital in August 1987. The previous owner, Hamlet Hospital, Inc., had provided medical benefits to its employees through a self-insured plan administered by Blue Cross Blue Shield (BCBS). Nikki was covered by the BCBS plan. However, because HMA maintains its own employee benefit plan—Health Management Associates, Inc. Employee Benefit Plan (HMA Plan)—for employees of its hospitals, HMA decided to replace the BCBS-administered plan with its own plan. The BCBS plan terminated on September 30, 1987, and the HMA Plan went into effect on October 1, 1987.

Defendant Cohen Benefit Group, Inc. (CBG) administers the HMA plan. HMA arranged for Phil Cohen, president of CBG, to meet with Hamlet Hospital employees concerning the changeover of health coverage from the BCBS Plan to the HMA Plan. Cohen held meetings with Hamlet Hospital employees in mid-September 1987, before the HMA Plan was in effect. The purpose of these meetings was to familiarize prospective participants about matters such as the HMA Plan's benefits, eligibility requirements, limitations and exclusions. Mr. Cohen's agenda included asking employees who had special health concerns to remain after the meeting to further discuss questions of Plan coverage.

Danny Smith attended one of the September meetings. Upon Cohen's invitation, Smith remained after the meeting to inquire about the eligibility of his severely handicapped daughter for benefits under the HMA Plan. Cohen is alleged to have answered Smith's questions by saying that if Nikki was covered under the BCBS-administered plan, she would be covered under the HMA Plan, "No questions asked."

Smith alleges that, in reliance upon Cohen's representation, he did not convert coverage under the BCBS-administered plan into a private policy within the time he was eligible to do so, but enrolled himself and his family in the HMA Plan unaware that the

---

1. Factual statement is taken from the opinion of June 12, 1991, ruling on Plaintiffs initial complaint against CBG and other defendants, Civ. No. C–89–155–R.

HMA Plan contained an exclusion for preexisting conditions. The Summary Plan Description, which reveals this exclusion, was distributed to Plan participants in a timely fashion in December 1987.

Nikki became ill frequently, and Plaintiffs submitted claims under the HMA Plan for her subsequent medical expenses. CBG paid $26,351.47 toward Nikki's claims. Prompted by notification of an unusually long hospital stay, the HMA Plan's case management company investigated and determined that Nikki's bills were the consequence of a preexisting condition that should have precluded coverage. Saying Nikki's coverage had been a mistake from the beginning, CBG canceled her coverage in October 1988. This suit resulted. CBG has reimbursed HMA the $26,351.47 paid toward Nikki's claims.

## II.

Plaintiffs' initial complaint named CBG, HMA and the HMA Plan as defendants. It asserted four claims under state law and three claims under federal law. Defendants removed the case to this Court and moved for summary judgment on all claims. Plaintiffs' original complaint asserted three claims under the Employment Retirement Income Security Act, "ERISA," 29 U.S.C. § 1001, *et seq.* In an opinion filed June 12, 1991 (Civ. No. C–89–155–R), this Court held that Plaintiffs lacked standing to claim benefits under ERISA and dismissed the federal claims. Plaintiffs asserted state common law claims for tortious breach of contract, intentional infliction of emotional distress, and estoppel. The Court held that these claims were "related to" an employee benefit plan and were preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (common law claims for benefits under plan are preempted). Plaintiff's remaining state law claim of fraud in the inducement was preempted and dismissed as to original defendants HMA and HMA Plan. As to those defendants, the claim directly related to the self-insured plan, brought Plaintiffs' eligibility for plan benefits into question and affected plan administration. However, relying on *Perkins v. Time Ins. Co.,* 898 F.2d 470 (5th

Cir.1990), the Court ruled that Plaintiffs' claim for damages against CBG was not preempted. With only the one state law claim against CBG remaining, the case was remanded to state court.

On December 13, 1991, Plaintiffs moved the state court for leave to amend their complaint to state additional claims against CBG. Plaintiffs' motion to amend was heard, granted and deemed filed on January 7, 1992, by the state court. CBG filed a notice of removal (as to the causes of action alleged in the amended complaint) on January 13, 1992, citing pre-emption under ERISA as the grounds for federal jurisdiction.

Plaintiffs' amended complaint is now before the Court on Defendants' motion for summary judgment and Plaintiffs' motion to remand the case to state court.

## III.

Plaintiffs' amended complaint alleges common law causes of action in actual fraud, constructive fraud (based on breach of common law fiduciary duty) and negligent misrepresentation. State law claims are preempted if they "relate to" an ERISA plan within the meaning of 29 U.S.C. § 1144(a). A claim relates to an ERISA plan when it has a connection with or makes reference to an ERISA plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

Defendant argues that *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) and *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), are controlling and that they require the Court to find that all of Plaintiffs' actions "relate to" an ERISA Plan. In *McClendon,* the Supreme Court held that an employee's state common law claim that he was wrongfully discharged to prevent the attainment of benefits under an ERISA plan was pre-empted. The Court decided that where the existence of the plan is a critical factor in establishing liability, such that under the state law there is *no* cause of action if there is no plan, then the law relates to ERISA and is pre-empted. *McClendon,* 498 U.S. at 140, 111 S.Ct. at 483. The cause of action was also pre-empted because it was in

direct conflict with an ERISA cause of action. *Id.,* 498 U.S. at 142, 111 S.Ct. at 484.

The *McClendon* rationale is not applicable to the case at bar. Central to the *McClendon* holding was the fact that the state law at issue made specific reference to benefit plans.

> We are not dealing here with a generally applicable [law] that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan.... Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law....
>
> .... The Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan. In the words of the Texas court, the cause of action "allows recovery when the Plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund."
>
> ... [U]nder the Texas court's analysis there simply is *no* cause of action if there is no plan.

*Id.,* at 139–140, 111 S.Ct. at 483–484 (emphasis supplied). Unlike the Texas cause of action in *McClendon,* the North Carolina causes of action asserted here, fraud, constructive fraud, and negligent misrepresentation are general laws that function irrespective of the existence of an ERISA plan. It is true, factually, that resolution of Plaintiffs' claims may require reference to the HMA Plan. However, liability is not premised on conditions in or a construction of the plan. The possibility that certain undisputed facts will be established by reference to the plan does not bring these common law claims within the ERISA pre-emption provision. The existence of the Plan is not a critical factor to establishing liability because the same causes of action would exist if the Plan had never come into existence or was merely a fraudulent scheme. Therefore, *McClendon* is distinguishable and not controlling on this issue.[2]

The factual basis for each of Plaintiffs' claims, the alleged misrepresentation made by Phil Cohen, attributable to CBG, that Nikki's pre-existing condition would be covered under the HMA Plan, is no different from the factual basis for Plaintiffs' original claim of fraud in the inducement. The June 12, 1991 opinion in this case relied on the reasoning of *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473–474 (5th Cir.1990), to hold that Plaintiffs original claim of fraud in the inducement did not "relate to" an ERISA Plan within 29 U.S.C. § 1144(a).

> While ERISA clearly preempts claims of bad faith as against insurance companies for improper processing of a claim for benefits under an employee benefit plan, [ ] and while ERISA plans cannot be modified by oral representations [ ], we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation. Giving the ERISA "relates to" preemption standard is common-sense meaning [ ] we conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, "relates to" that plan only indirectly. A state law claim of that genre, which does not affect the relations among principal ERISA entities (the employer, the plan fiduciaries, the plan and the beneficiaries) as such, is not preempted by ERISA.

A fair reading of *Holliday* does not suggest that pre-emption is required on such a loose connection when a court otherwise finds that a cause of action does not "relate to" an ERISA plan. Moreover, the anti-subrogation statute at issue in *Holliday* had a direct impact, financially and administratively, upon the ERISA plan. As discussed above, application of the laws at issue herein cannot impact the HMA Plan in any measurable way. Defendant's arguments under *Holliday* are rejected.

---

**2.** Defendant also argues under *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), that the laws at issue in this case are similar to the pre-empted anti-subrogation statute in *Holliday.* Defendant is apparently arguing that because the HMA Plan is a self-funded plan and the plan at issue in *Holliday* was a self-funded plan, that any cause of action with even the most tangential and tenuous connection to a self-funded plan is pre-empted by ERISA.

*Id.,* at 473–474 (citations omitted). The Court again finds the reasoning in *Perkins* to be persuasive. Plaintiffs' claims are properly viewed as claims for damages based on alleged facts occurring before the Plan was in existence and simply allege alternative methods for accomplishing what, generically, could be categorized as fraud in the inducement, *i.e.,* actual misrepresentation, constructive fraud, and negligent misrepresentation.

■ Should Plaintiffs prevail on any of their state law claims against CBG, they will not be entitled to Plan benefits but will be limited to a recovery of damages against CBG itself. Plan benefits could be considered only in calculating damages[3] against CBG and as a foil to the alleged misrepresentation. This sort of minimal connection to the Plan does not come within the ERISA pre-emption provision. *See Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120 (4th Cir. 1989). Furthermore, these claims do not negate any ERISA plan provision. At the time of the alleged misrepresentation, Plaintiffs were not participants or beneficiaries and Defendant was not a plan fiduciary. *See Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 434–435 (4th Cir.1986) (no status or duties until plan in effect). Therefore, resolution of these claims will not affect any relationship between primary ERISA entities. Ultimately, neither the general laws nor the specific claims asserted here have the potential to adversely impact financially or administratively upon the HMA Plan. These factors, and the Supreme Court's recognition that some state actions may effect benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law relates to the plan, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, lead to the conclusion that Plaintiffs' common law claims do not "relate to" an ERISA plan within 29 U.S.C. § 1144(a), and, therefore, that they are not pre-empted. *See Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,* 947 F.2d 1341, 1345 (8th Cir.

1991) (summarizing factors relevant to "relate to" decision under 29 U.S.C. § 1144(a)).

Although there is wording in Paragraphs 28–30 of Plaintiffs' amended complaint that CBG "wrongfully refused" to pay certain medical expenses incurred by Nikki Smith and wording in paragraphs 42 and 61(e) that CBG "continued to misrepresent" Plan coverage by paying claims for Nikki's expenses during the first year the Plan was in effect, these allegations must be read in the context of the actual claims asserted and not as an attempt to state separate, unnumbered and unspecified claims relating to benefits due under the Plan.

## IV.

Plaintiffs' amended complaint does not state a cause of action arising under the laws of the United States. This Court does not have subject matter jurisdiction to consider Defendant's Summary Judgment motion, and it is therefore DENIED. Because Plaintiffs originally filed this action in state court and no federal question exists, the state law claims of fraud, constructive fraud and negligence will be REMANDED to the North Carolina General Court of Justice, Superior Court Division, Richmond County.

---

3. It is not clear that reference to the HMA Plan will be required for the plaintiff to establish the damages element of any cause of action under state law. Plaintiffs' claim is that the alleged statements concerning coverage under the HMA Plan caused them to give up other opportunities to procure insurance for Nikki. Assuming Plaintiffs can show there were other such opportunities, damages would not be measured in the first instance by benefits available under the HMA Plan, but by benefits Plaintiffs could have received under the foregone option.