**Betty L. HAND, Plaintiff,**

v.

**CHURCH & DWIGHT CO., INC. and George Dombroski, Defendants.**

CA No. 6:97–517–20.

United States District Court,
D. South Carolina,
Greenville Division.

May 16, 1997.

Greg Morton, Phillip D. Donnan, Donnan, Morton, Davis & Snyder, P.A., Charles D. LeGrand, Greenville, SC, for Plaintiff.

Paul B. Lindemann, Stephen F. Fisher, Jackson, Lewis, Schnitzler & Krupman, Greenville, SC, for Defendants.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion of the defendants, Church & Dwight Co., Inc. ("Church & Dwight") and George Dombroski ("Dombroski"), for summary judgment. Although the defendants have captioned their motion as a motion to dismiss, the parties have presented matters outside the pleadings. Therefore, the motion shall be treated as one for summary judgment. See Fed.R.Civ.P. 12(b). The plaintiff, Betty L. Hand ("Hand"); filed a memorandum in opposition.

Viewing the facts in the light most favorable to the plaintiff, the court concludes that Hand is the former employee of Church & Dwight. Prior to leaving Church & Dwight, Hand negotiated a separation agreement with Dombroski, a representative from Church & Dwight, concerning her eventual termination. The separation agreement provided that Church & Dwight would pay Hand eighteen weeks of base salary commencing on her termination date. (Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 1 ¶ 1.) Church & Dwight further agreed that Hand would continue to be covered by its medical, dental, and life insurance employee benefit plans "during this period of time." Id. at ¶ 2. Handwritten into the agreement and initialed by Dombroski, the termination date was described as the date "when a medical Dr. determines she is no longer disabled." Id. at 1. In exchange for these considerations, Hand agreed to release all claims against Church & Dwight. Id. at ¶ 4.

Although no doctor ever determined that Hand was no longer disabled, Church & Dwight discontinued her coverage under its benefits plan and declined to pay her the eighteen weeks of severance pay. Hand filed suit. Hand claims that the defendants are liable based on state law claims of breach of contract, fraud, and negligent misrepresentation. The defendants claim that the Employee Retirement Income Security Act ("ERISA") governs Hand's claims, and, therefore, that her state law causes of action are preempted. The defendants contend that because Hand has not stated a claim based on ERISA, the court must dismiss her suit.

The question before the court on the motion for summary judgment is whether the agreement between Church & Dwight and Hand implicates ERISA such that all of Hand's state law claims are preempted. The court will address each of Hand's state law claims in order.

### BREACH OF CONTRACT

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Hand's breach of contract claim may be preempted if the severance agreement itself constitutes a 'plan' under ERISA or if the severance agreement 'relates to' an ERISA plan.

"Severance benefit programs generally are covered by ERISA as they are expressly included in the definition of 'employee welfare benefit plan' under 29 U.S.C. 1002(1)." *Schonholz v. Long Island Jewish Med. Ctr.*, 889 F.Supp. 610, 612 (E.D.N.Y.1995), *aff'd*, 87 F.3d 72 (2d Cir.1996) (*Schonholz I* ). The United States Supreme Court established an

exception to this general principle in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

In *Fort Halifax*, the United States Supreme Court set forth a relatively simple test to determine whether a severance benefit plan constitutes an ERISA plan. The *Fort Halifax* test asks whether the plan requires the establishment and maintenance of a separate ongoing administrative scheme. *Id.* at 11, 107 S.Ct. at 2217. "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* Therefore, according to *Fort Halifax*, "[i]n order to fall within ERISA preemption, a benefit plan must require ongoing administration separate from other benefit plans administered by the employer." *Schonholz I*, 889 F.Supp. at 612.

### The Biggers Decision

In *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291 (4th Cir.1993), the Fourth Circuit considered a severance agreement between an employee and his employer. The agreement stated that the defendant would pay the plaintiff a year's salary in the event of his termination. *Id.* at 296–97. After assuming that the alleged agreement was a distinct arrangement covering only this particular employee, the court concluded in a brief paragraph that the agreement constituted a plan under ERISA and that his breach of contract claim was preempted. *Id.* at 297. Without addressing *Fort Halifax*, the Fourth Circuit stated: "It is beyond question that plans established by an employer to provide severance benefits are employee welfare benefit plans within the scope of ERISA." *Id.* at 297.

In virtually every other circuit, however, *Fort Halifax* represents the threshold inquiry for determining whether a given severance benefit plan implicates ERISA.[1] *Cvelbar v. CBI Illinois, Inc.*, 106 F.3d 1368, 1374 (7th Cir.1997) (applying *Fort Halifax* to determine that severance agreement between an employee and employer required ERISA preemption); *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996) (same); *Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir.1994), *cert. denied*, 514 U.S. 1037, 115 S.Ct. 1402, 131 L.Ed.2d 289 (1995) (applying *Fort Halifax* to find that severance agreement between a single employee and his employer was not subject to ERISA preemption despite the fact that it provided for a continuation of benefits); *Fontenot v. NL Indus., Inc.*, 953 F.2d 960 (5th Cir.1992) (same); *see also James v. Fleet/Norstar Fin. Group, Inc.*, 992 F.2d 463 (2d Cir.1993) (holding that a lump-sum payment pursuant to a severance agreement did not implicate ERISA pursuant to *Fort Halifax*); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3rd Cir.1992) (applying *Fort Halifax* to a "buyout" plan). "In this cloudy corner of the law, each case must be appraised on its own facts. All that can be stated with assurance is that *Fort Halifax* controls. Thus, so long as a proffered benefit does not involve employer obligations materially beyond those reflected in *Fort Halifax*, the benefit will not amount to a plan under the ERISA statute." *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995) (internal citation omitted). Although there appears to be some conflict between *Biggers* and the other circuits' interpretations of *Fort Halifax*, the court need not address this issue because, even under the *Fort Halifax* analysis, Hand's severance agreement constitutes an ERISA plan and preempts her state law breach of contract claims.

---

1. The court concedes that the interplay between severance benefits and ERISA preemption has been addressed several times by the Fourth Circuit with the result that ERISA preempts all state law contractual claims. *See O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 362 n. 3 (4th Cir.1991) (discussing Fourth Circuit precedent with regard to severance benefits and ERISA); *see also Tobin v. Ravenswood Aluminum Corp.*, 838 F.Supp. 262, 268–70 (S.D.W.Va.1993) (same). However, these cases appear to be factually distinguishable because there was no dispute that the severance benefits constituted ERISA plans.

*Discretion*

■ Under *Fort Halifax*, whether a severance agreement establishes a separate, ongoing administrative scheme often turns on the discretion that the agreement gives to the employer to determine the payment of benefits.[2] *Fludgate v. Management Technologies, Inc.*, 885 F.Supp. 645, 648 (S.D.N.Y. 1995) ("The characterization of severance payments as governed by ERISA has hinged on the amount of employer discretion involved in providing payment.").

For example, in *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996) (*Schonholz II*), the Second Circuit used the *Fort Halifax* test to analyze a severance benefits plan that provided benefits which were partially based upon an employee's prospects for reemployment. However, the payments would be made "only if the employee displayed a reasonable and good faith effort to obtain a position commensurate with his former level of responsibility." *Id.* at 74. The Second Circuit found that this severance plan was governed by ERISA due to the amount of discretion and the ongoing administrative scheme that was involved in determining eligibility for benefits. *Id.* at 76.

In *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993), the Ninth Circuit stated that a severance agreement which requires discretionary determinations such as "substantially similar employment," implicates an administrative scheme. *Id.* at 1323. This determination requires decision making which obligates the administrator to engage in "ongoing, particularized, administrative, discretionary analysis." *Id.* "Crucial to the analysis in *Bogue* was the fact that the employer would need to make its discretionary determinations ten times, as it considered the severance benefits in each of the ten top executives' contracts." *Delaye*, 39 F.3d at 238.

In *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368 (7th Cir.1997), the Seventh Circuit found that a severance agreement between a single employee and his employer contained the requisite amount of discretion to create an "ongoing scheme" pursuant to *Fort Halifax*. One of the primary offending clauses in the severance agreement stated that "in the event any payment to be made or benefit to be provided to the Employee pursuant to this Agreement is deemed, in the sole opinion of Company's counsel, to be contingent on a 'change in ownership or control' " then the aggregate amount of benefits could be reduced or terminated. *Id.* at 1371. Because this severance agreement created an ongoing scheme, the plaintiff's only remedy was pursuant to ERISA. *Id.* at 1374–78.

*Hand and Church & Dwight Severance Agreement*

As can be determined from the cases cited above, the amount of discretion necessary to hurl a plaintiff's case into the maze of ERISA does not lend itself to precise analysis. "The test for deciding which employer obligations and undertakings require such a program is opaque." *Schonholz II*, 87 F.3d at 76. Even so, the court must make the attempt.

■ The court finds that the agreement between Hand and Church & Dwight grants discretion and involves an ongoing administrative scheme. The handwritten portion of the severance agreement states: "Termination date shall be when a medical Dr. determines [Hand] is no longer disabled." (Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 1). In order to determine whether Church & Dwight is obligated to continue her enrollment in their benefit plan, Hand's medical status must be assessed. This analysis is not a simple arithmetical calculation or clerical determination. *James*, 992 F.2d at 468. Furthermore, Hand's medical status would require periodic updating. As such, the dis-

---

**2.** The fact that the agreement between Hand and Dwight & Clark would only cover a single employee does not change the analysis. "We are not aware of any requirement that a plan must cover more than one employee in order to be controlled by ERISA. Neither the definition of 'employee welfare benefit plan' nor 'employee benefit' includes any suggestion that the number of employees covered is a limiting factor." *Biggers*, 4 F.3d at 297 *accord Cvelbar*, 106 F.3d at 1376.

cretionary determination of her medical status might have to be made numerous times in the future. In addition, the severance agreement requires ongoing monitoring of Hand to insure that "she will not cause nor permit to be filed on her behalf any charge, complaint or action." (Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 1 ¶ 4.) Therefore, the court finds that the agreement between Hand and Church & Dwight involves an ongoing administrative scheme and does not fall within the *Fort Halifax* exception.

The court's decision is bolstered by reference to the *Donovan* test. "In determining whether a plan, fund or program ... is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc).[3] The intended benefits are the severance payments and continued enrollment in Church & Dwight's established benefits plan. The beneficiary is Hand. The source of the financing is Church & Dwight.

As a result, the court concludes that the severance agreement between Hand and Church & Dwight is an ERISA plan. Therefore, Hand's claim for breach of contract is preempted. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). However, due to the nature of ERISA and its underlying purpose, *see* 29 U.S.C. § 1001, the court finds that the interests of justice require Hand to be allowed to amend her complaint to state any causes of actions that she may wish to assert pursuant to the provisions of ERISA. *See Tri–State Machine, Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309 (4th Cir.1994), *cert. denied*, 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995) (stating that after determining that the plaintiff's causes of action were preempted, the district court gave the plaintiff a chance to pursue an ERISA cause of action).

## FRAUD AND NEGLIGENT MISREPRESENTATION

ERISA preempts state-law claims to the extent they 'relate to' any ERISA plan. 29 U.S.C. § 1144(a). "A state-law claim 'relates to' an ERISA plan, hence is preempted, 'if it has a connection with or reference to such a plan,' so that state common-law tort and contract actions which are 'based on alleged improper processing of a claim for benefits under an employee benefit plan' are preempted by ERISA." *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996).

Even though the court has determined that the severance agreement constitutes a plan pursuant to ERISA, Hand's claims of fraud and negligent misrepresentation are not necessarily preempted. In her complaint, Hand states that she has suffered two different types of damages. Initially, Hand claims that she has suffered damages in that she has not received the benefits described in the agreement or the severance payments that she is entitled to pursuant to the agreement. *See* (Compl. ¶¶ 32, 40.) In a case where the "the claims amount to a demand for past and future health care benefits *from* an ERISA plan" ERISA preemption is applicable to state law claims. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418 (4th Cir.1993); *see also Stiltner*, 74 F.3d at 1480 ("We think it very likely that the claim is preempted by ERISA § 514(a), because it seeks to recover benefits of a sort which are already provided by an ERISA plan, even though it seeks to recover them not from the plan itself, but from the employer directly."). "Misleading misrepresentations made to Plan participants regarding Plan benefits may in some circumstances give rise to a cause of action for breach of fiduciary duty." *Singer v. Black & Decker Corp.*, 769 F.Supp. 911, 918 (D.Md.1991), *aff'd*, 964 F.2d 1449 (4th Cir.1992) (citing *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154 (6th Cir.1988)). Thus, Hand's claims for benefits from the severance agreement pursuant to theories of fraud

---

**3.** The *Donovan* test was adopted by the Fourth Circuit in *Elmore v. Cone Mills*, 23 F.3d 855, 861 (4th Cir.1994) (en banc).

and negligent misrepresentation are claims that not only relate to an ERISA plan but are also claims that ERISA may permit within its statutory provisions. Therefore, to the extent that Hand's claims for fraud and negligent misrepresentation seek benefits or severance payments pursuant to the agreement, these claims are preempted by ERISA.

■ Second, Hand seeks damages based on the defendants' misrepresentations that induced her to sign the severance agreement. *See* (Compl. ¶¶ 31, 40.) In particular, Hand alleges that, based on the defendants' misrepresentations, she relinquished a viable claim against Church & Dwight for age discrimination. *Id.* at ¶ 6. Whereas Hand's claim for benefits involves the administration of the plan, her claim for damages arising out of relinquished claims involves the circumstances surrounding the negotiations between Hand, Church & Dwight, and Dombroski. The central issue of this claim, therefore, involves the representations of the defendants that were made in order to induce the plaintiff to forego legal rights that she could have exercised.

In *Smith v. Cohen Benefit Group, Inc.*, 851 F.Supp. 210 (M.D.N.C.1993), the plaintiff alleged that he did not convert coverage from the previous benefit plan provided by his employer to a private policy because a plan representative told him that the subsequent plan would provide coverage to the same extent as the previous plan. Eventually, the plaintiff was denied coverage under the subsequent plan based on the plan's exclusion of preexisting conditions. *Id.* at 211. The plaintiff's complaint alleged state law causes of action for fraud, constructive fraud, and negligent misrepresentation. The district court held that ERISA did not preempt these claims.

The district court found that liability was not premised on the plan. Although resolution of the plaintiff's claims might require reference to the plans, "[t]he possibility that certain undisputed facts will be established by reference to the plan does not bring these common law claims within the ERISA pre-emption provision." *Id.* at 213. The district court went on to state that:

Should Plaintiffs prevail on any of their state law claims, ... they will not be entitled to Plan benefits but will be limited to a recovery of damages against [the entity that made the misrepresentations.] Plan benefits could be considered only in calculating damages ... and as a foil to the alleged misrepresentation. This sort of minimal connection to the Plan does not come within the ERISA pre-emption provision.

*Id.* at 214 (citing *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir.1989)); *see also Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1470 (4th Cir.1996) (citing *Smith*, 851 F.Supp. at 210 approvingly).

In *All Risks v. Equitable Life*, 931 F.Supp. 409 (D.Md.1996), plaintiffs alleged common law causes of action based on misrepresentations made to them to induce them to join a pension plan. *Id.* at 412. The defendants sought to have these causes of action dismissed pursuant to ERISA's preemption provisions. *Id.* at 413. After a lengthy discussion of the pertinent case law, the district court concluded that "allowing state claims based on alleged false representations made prior to the adoption or sale of employee benefits plans will in no way raise the type of concerns that prompted Congress to enact ERISA's preemption provision." *Id.* at 417.

Therefore, after applying the pertinent case law, the court concludes that ERISA does not preempt Hand's fraud and negligent misrepresentation causes of action to the extent that she seeks damages for alleged misrepresentations made with the purpose of inducing her to sign the severance agreement.

The court's decision is also based on *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116 (4th Cir.1989). In *Pizlo*, the plaintiffs brought state claims for breach of contract, promissory estoppel, and negligent misrepresentation. The central issue in their complaint was whether they had been wrongfully terminated. The Fourth Circuit stated: "The [state law] claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term." *Id.* at 120.

Although the plaintiffs' damages were measured in part by the benefits that they would have received had they remained employed, their claims were not based on determinations of eligibility for benefits. *Id.* The Fourth Circuit held that "a state law claim does not 'relate to' an employee benefit plan if it would not create conflicting employer obligations and variable standards of recovery, determine whether any benefits are paid, nor directly affect the administration of benefits under the plan." *Colleton Regional Hosp. v. MRS Med. Review Systems,* 866 F.Supp. 891, 894 (D.S.C.1994) (citing Pizlo, 884 F.2d at 120); *see also Long v. Lockheed Missiles and Space Co., Inc.,* 783 F.Supp. 249, 253 (D.S.C.1992) (Where "[t]he existence of the pension plan is not critical to determining liability and the inquiry does not 'relate to' the pension plan itself," ERISA's preemption provisions do not apply.).

The court finds that Hand's fraud and negligent misrepresentation claims for inducing her to sign the severance agreement will not (1) create conflicting employer obligations and variable standards of recovery; (2) involve determining whether any benefits are paid; nor (3) directly affect the administration of benefits under the plan. *See also Smith v. Texas Children's Hosp.,* 84 F.3d 152, 155 (5th Cir.1996); *Perkins v. Time Ins., Co.,* 898 F.2d 470 (5th Cir.1990); *Perry v. P\*I\*E Nationwide Inc.,* 872 F.2d 157 (6th Cir.), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990); *but see Consolidated Beef Industries, Inc. v. New York Life Ins. Co.,* 949 F.2d 960 (8th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791 (11th Cir. 1989).

In conclusion, the court finds that Hand's claims for breach of contract must be dismissed as they are preempted by ERISA. However, the court will allow Hand to amend her complaint to state any causes of action pursuant to ERISA based on the severance agreement.[4] The court also finds that Hand's claims for fraud and negligent misrepresentation are preempted to the extent that they involve the administration of benefits pursuant to the severance agreement. The court also finds, however, that Hand's claims for fraud and negligent misrepresentation are not preempted by ERISA to the extent that she seeks damages for alleged misrepresentations made by the defendants to induce her to sign the severance agreement. Therefore, for the foregoing reasons, it is

**ORDERED** that the defendants' motion for summary judgment is granted in part and denied in part. It is further

**ORDERED** that Hand is granted twenty days to amend her complaint.

**IT IS SO ORDERED.**

---

4. Even though Hand may ultimately choose not to assert claims pursuant to ERISA, this court still has diversity jurisdiction over the suit. See (Defs.' Notice of Removal ¶ 7); 28 U.S.C. § 1332.