**Tammie Sanford LAMBERTY, Plaintiff,**

v.

**PREMIER MILLWORK AND LUMBER CO., INC., George Melnyk, Sr., and Carol Melnyk, Defendants.**

No. 2:04CV336.

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 5, 2004.

Walton Everett Lupton, Esquire, The Joynes & Gaidies Law Group, PC, Virginia Beach, VA, for Plaintiff.

Philip L. Russo, Jr., Esquire, Virginia Beach, VA, for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendants' motion to dismiss for failure to state a claim. For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

### I. Factual and Procedural History

In August 1999, plaintiff Tammie Sanford Lamberty entered into an employment agreement with defendant Premier Millwork and Lumber Co., Inc. ("Premier"). (Compl.¶ 5.) At all times relevant to this litigation, Premier was owned by defendant George Melnyk, Sr., who also served as Premier's president. (*Id.* ¶ 3.) Defendant Carol Melnyk was at all relevant times an employee and agent of Premier. (*Id.* ¶ 4.) Plaintiff was employed by Premier from approximately September 1999 through June 2000. (*Id.* ¶ 10.)

As part of plaintiff's employment agreement, defendant Premier promised to provide health care insurance for plaintiff during the term of her employment. (*Id.* ¶ 5.) Plaintiff's health care was to be provided by Optima Health Plan ("Optima"). (*Id.* ¶ 6.) Premier withheld specific amounts of monies from plaintiff's pay, which were to be paid to Optima in consideration for plaintiff's health coverage. (*Id.* ¶ 7–8.) For the period from December 1, 1999, through January 31, 2000, Premier withheld approximately $7.68 per week from plaintiff's pay. (*Id.* ¶ 9.) For the period from January 31, 1999, through June 26, 2000, Premier withheld approximately $14.85 per week from plaintiff's pay. (*Id.*)

Throughout plaintiff's term of employment, defendant Premier represented to plaintiff that the amounts withheld were being paid to Optima, and that plaintiff was covered by an Optima health insurance policy. (*Id.* ¶ 11–12.) In fact, however, defendant Premier had terminated plaintiff's coverage with Optima, and instructed Optima to give plaintiff's withheld pay for May and June 2000 to Premier. (*Id.* ¶ 14–15.) Thus, although defendant Premier continued to represent to plaintiff that she had valid health coverage with Optima through June 2000, plaintiff in fact had no health coverage beginning in May 2000. (*Id.* ¶ 19.) Neither Optima nor Premier has refunded to plaintiff the withheld pay from May and June 2000. (*Id.* ¶ 9.)

On or about February 2, 2000, plaintiff suffered an unspecified injury. (*Id.* ¶ 17.) Plaintiff sought medical treatment for this

injury in May, June, July, and August, 2000. (*Id.* ¶ 18.) Because defendant Premier had terminated plaintiff's insurance coverage with Optima, plaintiff's medical treatment in the summer of 2000 was not covered by the Optima insurance plan, and plaintiff incurred numerous expenses. (*Id.* ¶ 20–22.)

On May 17, 2004, plaintiff filed a Motion for Judgment ("complaint") in the Circuit Court for the City of Virginia Beach. Plaintiff's complaint states three causes of action: breach of contract, in violation of Virginia common law; fraud, in violation of Virginia common law; and breach of fiduciary duty, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* On June 3, 2004, defendants removed the case to this court on the basis of federal question jurisdiction. On June 7, 2004, defendants filed the instant motion to dismiss. On June 21, 2004, plaintiff filed a response. Defendants filed a reply on July 16, 2004.[1] On July 26, 2004, the court heard argument from the parties on the issues presented by the instant motion. Accordingly, the motion is now ripe for review.[2]

## II. Analysis

A complaint should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears to a certain-ty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Plaintiff's complaint states three counts. Counts I and II allege breach of contract and fraud, respectively, in violation of Virginia common law. Count III alleges breach of fiduciary duty, in violation of ERISA. Defendants purport to seek dismissal on four bases: (1) the state law claims alleged in Counts I and II are preempted by ERISA; (2) any ERISA claims are barred by the statute of limitations; (3) plaintiff does not have a right to a jury under ERISA; and (4) Count III does not properly allege a cause of action for fraud. Defendants' second and fourth bases for dismissal, the statute of limitations and the sufficiency of fraud allegations, are logically related and will be addressed together. Defendants' third basis, however, is not properly a motion to dismiss at all, and will instead be considered as a motion to strike plaintiff's jury de-

---

1. Defendants' reply was filed subject to defect for untimeliness. At no time have defendants moved to extend the time for filing their reply, which was due by June 28, 2004. Accordingly, the court has not considered defendants' reply in deciding the instant motion.

2. The court notes that these parties appeared before it in 2002 on substantially similar claims. Plaintiff, whose surname at the time was Sanford, had filed suit in Virginia Beach Circuit Court against the same defendants as presented here, alleging a somewhat less detailed version of the facts underlying the instant case. Unlike this case, however, plaintiff did not claim a cause of action under ERISA, and instead alleged only state-law claims of breach of contract and fraud. Defendants added Optima as a third-party defendant, and Optima removed the case to this court. In an Opinion and Order entered December 10, 2002, this court remanded the matter to the Virginia Beach Circuit Court, holding that removal by a third-party defendant was improper under the circumstances presented. *See Sanford v. Premier Millwork & Lumber Co.,* 234 F.Supp.2d 569 (E.D.Va. 2002). The procedural holding of the 2002 case has no implications for the instant matter.

mand, pursuant to Federal Rule of Civil Procedure 39(a)(2).

### A. Preemption of Plaintiff's State Law Claims

ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The phrase "relates to" has been given a broad, common-sense meaning: "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Accordingly, the Fourth Circuit has held that when a plaintiff's state law claims "amount to a demand for past ... health care benefits from an ERISA plan," those state law claims are preempted. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418 (4th Cir. 1993); *see also Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir.1996) (en banc) (suggesting in dicta that the plaintiff's state law claims were preempted because he sought "to recover benefits of a sort which are already provided by an ERISA plan").

 Although broad and far-reaching, ERISA's preemptive power is not without limits. A state law claim is not preempted by ERISA merely because the claim makes some incidental reference to an ERISA plan. Some state law claims affect employee benefit plans in "too tenuous, remote, or peripheral a manner" to be preempted as "related to" an ERISA plan. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890. Although a substantial number of decisions have attempted to clarify the distinction between claims which "relate to" an ERISA plan and those which are incidental to an ERISA plan, the court will specifically address three such decisions, two of which were extensively discussed by plaintiff in her brief in opposition.

In *Pizlo v. Bethlehem Steel Corporation*, cited and discussed by plaintiff, the Fourth Circuit held that under the circumstances presented, state law claims for breach of contract, promissory estoppel, and negligent misrepresentation were not preempted by ERISA. 884 F.2d 116, 120 (4th Cir.1989). *Pizlo* concerned whether former Bethlehem Steel employees were wrongfully terminated from employment after an alleged oral contract of employment for a term. *Id.* Although the damages claimed included lost health and pension benefits, these issues were incidental to the alleged unlawful termination, and insufficient to preempt claims which were at essence unrelated to an ERISA plan.

Similarly, in *Hand v. Church & Dwight Company*, the court sought to distinguish between state law claims which are and are not preempted by ERISA. 962 F.Supp. 742, 746–48 (D.S.C.1997). *Hand* concerned a separation agreement made in light of the plaintiff's termination from employment with Church & Dwight Company. *Id.* at 743. The agreement provided in part that the plaintiff, Mrs. Hand, would continue to be covered by Church & Dwight's employee benefit plans for a specified period. *Id.* In exchange, Hand agreed to release any legal claims she may have asserted against Church & Dwight. *Id.* When Church & Dwight discontinued Hand's coverage under the benefits plans, Hand sued under theories of fraud and negligent misrepresentation. *Id.* The court held that, to the extent Hand was seeking plan benefits, her state law claims were preempted by ERISA, and were in fact ERISA claims. *Id.* at 747. However, to the extent Hand was seeking damages for having relinquished her legal claims against Church & Dwight, the claims were not "related to" an ERISA plan, and

therefore not subject to preemption. *Id.* at 747–48.

Finally, *Smith v. Cohen Benefit Group,* also cited and discussed in plaintiff's brief in opposition, concerned state law claims against a plan administrator for having fraudulently induced the plaintiff to participate in an ERISA plan which did not include promised coverage. 851 F.Supp. 210, 212 (M.D.N.C.1993). Specifically, the plan administrator had told plaintiff Smith that his severely handicapped daughter would be covered under Smith's new health care plan to the same extent that she had been covered under Smith's former plan. *Id.* In fact, however, the new plan denied claims for Smith's daughter, stating that her medical bills were the result of a preexisting condition which precluded coverage. *Id.* Because Smith was not suing to recover a benefit under the plan, but was instead seeking damages for a promised benefit which was *not* part of the ERISA plan, the claim did not "relate to" an ERISA plan, and was not preempted. *See id.* at 214 ("Should Plaintiffs prevail on any of their state law claims … they will not be entitled to Plan benefits.").

■ Upon review of the instant complaint, plaintiff's state law claims "amount to a demand for past … health care benefits from an ERISA plan," and are appropriately preempted by ERISA. *See Custer,* 12 F.3d at 418. Plaintiff's alleged damages on Counts I and II include (1) unpaid medical bills; (2) the expenses, interest, and costs associated with the unpaid bills; and (3) the expense of obtaining health insurance from another source. (Compl.¶¶ 20–22, 35.) The requested relief is plainly a demand for past health care benefits which were withheld because of defendants' alleged malfeasance, and the court can see no alternate way of accurately characterizing the claims.

Although plaintiff seeks to liken her claims to those found to survive preemption in *Pizlo* and *Smith,* these comparisons are unpersuasive. In *Pizlo,* plaintiff's lost health and pension benefits were only part of a potential recovery for a state-law unlawful termination claim. Here, by contrast, plaintiff's claim is solely for lost health benefits and other damages incidental to the lost benefits. Unlike *Pizlo,* the plan benefits in question are not an incident of potential relief, but the very core and substance of plaintiff's potential relief.

By the same token, plaintiff's circumstances are not materially similar to those in *Smith.* The plaintiff in *Smith* was not suing to recover a benefit under an ERISA plan, but rather a promised benefit which was not part of the actual plan. Here, however, plaintiff's recovery would logically consist of whatever benefits she would have been entitled to under the Optima plan, had defendants not terminated her coverage. *See Stiltner,* 74 F.3d at 1481 (holding that the plaintiff's claim that his former employer wrongfully terminated benefits to which he was entitled under his employment contract could not be resolved without referencing the relevant ERISA plan). Plaintiff's claims are thus more like the benefits claims found preempted in *Hand* than the claims found to survive preemption in *Smith.*

The court's conclusion that the state law claims of Counts I and II are preempted is reinforced by plaintiff's claim under Count III. Count III alleges the same conduct comprising Counts I and II, but seeks relief under ERISA, rather than state law. Because plaintiff's state law claims are not only preempted, but preempted by the very claim stated in Count III, the court **DISMISSES** Counts I and II as preempted by ERISA.

## B. Statute of Limitations and the Sufficiency of Fraud Allegations

Defendants challenge Count III of the complaint, a claim of breach of fiduciary duty under ERISA, as untimely under the applicable statute of limitation. The limitations period of an ERISA breach of fiduciary duty claim is set forth in 29 U.S.C. § 1113:

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

■ Examining plaintiff's allegations in the light most favorable to her, as the court must in considering a motion to dismiss, it appears that plaintiff would have gained actual knowledge of defendants' alleged breach of fiduciary duties during or directly after the summer of 2000. Specifically, plaintiff sought medical treatment in May, June, July, and August, 2000. (Compl.¶ 18.) When coverage of this treatment was denied by Optima, plaintiff would have become aware that defendants had terminated her health insurance. Giving plaintiff the benefit of the most generous reading of these allegations, it appears that she would have gained actual knowledge of the alleged breach in late 2000.

Plaintiff filed the instant complaint in Virginia Beach Circuit Court on May 17, 2004. This is clearly more than three years after she would have gained actual knowledge of any alleged breach of fiduciary duty. Therefore, plaintiff's action was not filed within the three-year period of § 1113(2), and can only qualify as timely if plaintiff's action qualifies for the longer six-year period applicable to cases involving fraud or concealment.

■ The allegations of plaintiff's complaint are sufficient to allege fraud and qualify for the six-year limitations period. Under Virginia law, a claim of fraud requires six elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Dev. Co. v. Bershader,* 258 Va. 75, 515 S.E.2d 291, 297 (1999). Additionally, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) is generally understood to require that the plaintiff identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed.1990).

Here, plaintiff has alleged that defendants intentionally and knowingly misled her about the status of her insurance coverage, with the consequence that plaintiff suffered substantial expense when she sought medical treatment without coverage. Plaintiff further alleges that in so doing, defendants obtained for their own benefit monies withheld from plaintiff's pay which were intended to pay for her

insurance. These allegations are plainly sufficient to meet both state and federal requirements for a claim of fraud.

Because plaintiff has sufficiently alleged that her ERISA breach of fiduciary duty claim' is one involving fraud of conceal-ment, her claim qualifies for the six-year limitations period of § 1113(2), and has been timely filed. Accordingly, defendants' motion to dismiss on this basis is **DENIED**.

### C. Jury Right Under ERISA

Defendants have moved to strike plaintiff's demand for a jury. Federal Rule of Civil Procedure 39(a)(2) provides that all issues so demanded will be tried by jury unless "the court upon motion or of its own initiative finds that a right of trial by jury of some or all of these issues does not exist under the Constitution or statutes of the United States." Plaintiff's demand for a jury trial is justified if either there is a statutory right to a jury trial' under ERISA, or a' constitutional right under the Seventh Amendment.

■ The answer to the first question is clear: ERISA does not statutorily provide for trial by jury, either expressly or implicitly. The Fourth Circuit first held so in *Berry v. Ciba–Geigy Corporation*, 761 F.2d 1003, 1006 (4th Cir.1985), and reaf-

firmed that holding in *Biggers v. Wittek Industries*, 4 F.3d 291, 297–98 (4th Cir. 1993). Because ERISA does not statutorily authorize jury trial, the court must turn to an analysis under the Seventh Amendment.[3]

■ The right to trial by jury is preserved by the Seventh Amendment for "Suits at common law, where the value in controversy shall exceed twenty dollars." The phrase "Suits at common law" refers to actions involving the determination of legal, rather than equitable, rights and remedies. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). The right to a jury trial extends to causes of action created by Congress. *Id.* To decide whether a Seventh Amendment right to jury trial exists, the court must examine both (1) "the nature of the issues involved," to determine if they would have historically been brought in a court of law or a court of equity, and (2) "the remedy sought," to determine whether it is legal or equitable in nature. *Id.* The second prong is more important than the first. *Id.*

■ It is clear from Supreme Court precedent that ERISA's roots are in the common law of trusts, and that, traditionally, such actions were the province of courts of equity. *Mertens v. Hewitt As-*

---

**3.** Defendants have suggested that because the Fourth Circuit in *Biggers* did not address the Seventh Amendment issue, that opinion implies that Seventh Amendment analysis is not required in ERISA cases. Some district courts of this circuit have adopted this view. E.g., *Floyd v. Unum Life Ins. Co.*, No. 2:95cv753, 1996 U.S. Dist. LEXIS 20185, *16 (M.D.N.C Nov. 29, 1996); *Ellis v. Metro. Life Ins. Co.*, 919 F.Supp. 936, 938 (E.D.Va.1996) (Doumar, J.). Other courts, however, have held that the Fourth Circuit's silence on the Seventh Amendment issue in *Biggers* should not be interpreted to mean that the court was ruling on that issue. E.g., *Williams v. UNUM Life Ins. Co. of Am.*, 940 F.Supp. 136, 140 n.

14 (E.D.Va.1996). (Ellis, J.); *Colonial Williamsburg Found. v. Blue Cross & Blue Shield*, 909 F.Supp. 386, 389 (E.D.Va.1995) (Payne, J.); *Hulcher v. United Behavioral Sys.*, 919 F.Supp. 879, 883 n. 4 (E.D.Va.1995) (Mehrige, J.). This court finds the second view more persuasive, and agrees that "[g]iven the importance of the Seventh Amendment, and the fact that the right to a jury trial was not directly before the *Biggers* court, it is not persuasive that this silence should be construed to reflect a considered determination that the Seventh Amendment does not apply in ERISA cases." *Williams*, 940 F.Supp. at 140 n. 14.

*socs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Supreme Court has stressed, however, that determination of the first prong of the Seventh Amendment test "depends on the nature of the *issue* to be tried rather than the character of the overall action." *Terry,* 494 U.S. at 569, 110 S.Ct. 1339 (quoting *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)). Thus, while the overall ERISA action is equitable in nature, the particular issues involved in that action may be legal. Such appears to be the case here, as plaintiff's suit to recover what is due and owing under a benefits plan essentially presents an action at law to recover a legal entitlement. Several courts of this circuit have held that an action by a beneficiary to recover benefits is legal in nature. *Williams v. UNUM Life Ins. Co. of Am.,* 940 F.Supp. 136, 142 (E.D.Va.1996) (Ellis, J.); *Colonial Williamsburg Found. v. Blue Cross & Blue Shield,* 909 F.Supp. 386, 391 (E.D.Va.1995) (Payne, J.); *Hulcher v. United Behavioral Sys.,* 919 F.Supp. 879, 884 (E.D.Va.1995) (Mehrige, J.). This court concludes that the nature of the issues involved here is also legal.

The second prong of the Seventh Amendment test focuses on the nature of the relief sought. Here, plaintiff is seeking only compensatory damages. Specifically, plaintiff seeks damages for (1) unpaid medical bills; (2) the expenses, interest, and costs associated with the unpaid bills; and (3) the expense of obtaining health insurance from another source. (Compl.¶¶ 43–45.) Compensatory damages are "the classic form of legal relief." *Mertens,* 508 U.S. at 255, 113 S.Ct. 2063. While in some cases a request for legal relief may be intertwined with equitable remedies, rendering the overall nature of the relief equitable, *e.g., Williams,* 940 F.Supp. at 143; *Colonial Williamsburg Found.,* 909 F.Supp. at 391, such circumstances do

not present themselves here. Plaintiff here is not seeking equitable remedies such as restitution, declaratory judgments, an accounting, or the value of future benefits, which have been found in some circumstances to make a demand for money damages equitable in nature. Moreover, defendants have presented no argument that the relief sought is equitable rather than legal.

Because both the nature of the issues encompassed by plaintiff's claims and the overall nature of the relief sought are legal in nature, plaintiff is constitutionally entitled to trial by jury, and defendants' motion to strike the jury demand is DENIED.

### III. Conclusion

For the reasons set forth above, defendants' motion to dismiss Counts I and II is **GRANTED.** Defendants' motions to dismiss Count III and to strike plaintiff's jury demand are **DENIED.** The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**